UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DICONIA LLC; BRIAN TIBBETS; BREK A. PILLING; and 0.15 ACRES OF LAND, More or Less, located in Cassia County, Idaho,<br><br>    Defendants. | Case No. 4:25-cv-00007-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Plaintiff's Motion for Default Judgment against Defendants Diconia LLC and 0.15 Acres of Land, More or Less (Dkt. 29). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motion on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); Fed. R. Civ. P. 78(b). For the reasons below, the motion is granted.

## BACKGROUND

The United States brought this CERCLA enforcement action on January 7, 2025, seeking recovery of unreimbursed response costs incurred at the Burley Demolition Asbestos Site ("Site"), a 0.15-acre parcel located in Cassia County, Idaho. The Verified Complaint is supported by the attestation of EPA On-Scene Coordinator Stephen Ball (Dkt. 1 at 13). Plaintiff alleges that hazardous substances were disposed of and released or threatened to be released at the Site; EPA

conducted removal actions; and the United States incurred response costs recoverable under CERCLA §§ 107(a), 107(l), and 113(b).

The docket reflects the following service and appearance history: Defendants Brian Tibbets and Brek Pilling waived service and appeared by filing answers on March 3 and March 7, 2025, respectively (Dkts. 8, 10). Pilling also filed a crossclaim against Diconia and Tibbets (Dkt. 10). The United States served the property through posting and publication (Dkts. 14, 15). The United States personally served Diconia through its registered agent on March 10 (Dkt. 13). Diconia failed to appear or respond to the Complaint. On June 5, the Clerk entered default against Diconia and the 0.15 Acres of Land (Dkt. 27).

The United States now seeks default judgment against Diconia and the property only, requesting (1) $973,540.74 in unreimbursed response costs and (2) declaratory relief authorizing it to return to the Court to seek further relief, including judicial sale of the property (Dkt. 29; Dkt. 29-1). The United States supports its motion with the Declaration of Angeline Nieto, Lead Superfund Cost Recovery Accountant for EPA Region 10, and a certified cost summary (Dkt. 29-2).

No response to the motion has been filed by Diconia or the property. Because the appearing defendants—Tibbets and Pilling—have not been defaulted and have answered the Complaint, this default judgment applies only to Diconia and the in rem defendant property, leaving the claims against the answering defendants pending.

## LEGAL STANDARD

Whether to enter a default judgment is within the court's discretion. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). As a part of this discretion, a court looks to several factors outlined in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (hereinafter "Eitel factors"),

including (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim and the sufficiency of the complaint; (3) the sum of money at stake in the action; (4) the possibility of a dispute concerning material facts; (5) whether the default was due to excusable neglect; and (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

A court considering a motion for default judgment accepts all factual allegations in the complaint as true, except those relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). A court may conduct a hearing before entering a default judgment but is not required to do so if the record reveals no issue of material fact. *Kashin v. Kent*, 457 F.3d 1033, 1043 (9th Cir. 2006). Where "the amount claimed is a liquidated sum or capable of mathematical calculation," a district court may determine the amount of damages without a hearing. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). The party moving for default should explain how both law and evidence support an award of damages. *See Yoon Chul Yoo v. Arnold*, 615 Fed. App'x 868, 870 (9th Cir. 2015); *Weese v. Lusso Auto LLC*, No. CV-22-01564-PHX-SPL, 2023 WL 244501, at *6 (D. Ariz. Jan. 18, 2023) ("Courts may rely on declarations submitted by the plaintiff in determining appropriate damages.").

## ANALYSIS

**A.      Default Judgment Against Diconia and the Property**

The United States' Verified Complaint sufficiently alleges a CERCLA § 107(a) cost-recovery claim, including that (1) the Site is a "facility"; (2) hazardous substances were released or threatened to be released; (3) the EPA incurred response costs; and (4) Diconia is a covered person as the owner of the facility. These allegations are taken as true on default. The United States

effected proper service on Diconia and the property. (Dkts. 13-15.) Neither has appeared or responded.

The Eitel factors support default judgment. Plaintiff will be prejudiced absent judgment, as it cannot otherwise recover statutorily authorized response costs. The substantive claims are meritorious and sufficiently pleaded. Given the detailed cost documentation, the amount at stake is proportional to the conduct alleged. There is no indication of excusable neglect and no material factual dispute. Although Tibbets and Pilling have appeared, they oppose neither the motion nor the cost-recovery claim asserted against Diconia. Entry of default judgment at this stage does not prejudice the rights or defenses of the answering defendants, whose liability, if any, remains to be adjudicated on the merits. Entry of default judgment is therefore appropriate.

**B.     Damages**

The United States seeks $973,540.74 in unreimbursed response costs. The motion is supported by the Declaration of Angeline Nieto, EPA Region 10 Lead Superfund Cost Recovery Accountant, and the Certified Cost Summary for the Site (Dkt. 29-2).

1.     **CERCLA's cost-recovery framework**

CERCLA § 107(a)(4)(A) authorizes recovery of "all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan." Inconsistency is an affirmative defense that defaulting defendants forfeit. *United States v. Chapman*, 146 F.3d 1166, 1170 (9th Cir. 1998).

2.     **Reliability and sufficiency of the Nieto Declaration**

Ms. Nieto's declaration describes the EPA's systems for recording, validating, and certifying Superfund costs, including e-Recovery, Compass Financials, the Compass Data Warehouse, PeoplePlus (payroll), Concur (travel), and the Invoice Processing Platform (Dkt. 29-

2 ¶¶ 3-22). Further, Ms. Nieto attests that she reviewed the cost summary, reconciled each entry with underlying documentation, and confirmed the accuracy of all costs incurred through January 7, 2025 (Dkt. 29-2 ¶¶ 23-30). The EPA considers costs "incurred" only when paid by the U.S. Treasury, ensuring the accuracy of the total unreimbursed amount.

    3.    **Recoverable categories of response costs**

The Certified Cost Summary reflects the following response costs:

    Regional Payroll Costs: $40,804.61
    Headquarters Payroll Costs: $325.39
    Regional Travel Costs: $2,419.25
    Emergency and Rapid Response Service (ERRS): $376,840.82
    Enforcement Support Services (ESS): $2,410.35
    DOJ Interagency Agreement Costs: $70,306.87
    Records Management and RMSS: $1,867.21
    START Contractor Costs: $186,600.64
    EPA Indirect Costs: $291,965.60
    Total: $973,540.74

(Dkt. 29-2 at 8-9).

CERCLA covers these cost categories. *See* 42 U.S.C. §§ 9601(23) (removal includes "actions as may be necessary . . . to monitor, assess, and evaluate the release . . . the disposal . . . or the taking of other such as actions as may be necessary . . . . ," (25) (response includes "removal"). Further, the Ninth Circuit routinely approves recovery of indirect costs computed under EPA's Full Cost Methodology. *Chapman*, 146 F.3d at 1173-74.

    4.    **Damages are capable of mathematical calculation**

The EPA's itemized summary is complete, certified, and supported by sworn testimony. There is no contradictory evidence in the record. Because these damages are capable of mathematical calculation, no hearing is required. *Davis*, 650 F.2d at 1161.

Accordingly, the Court finds that Plaintiff has proven $973,540.74 in recoverable CERCLA response costs.

**MEMORANDUM DECISION AND ORDER - 5**

C.  **Declaratory Relief**

The United States seeks declaratory relief confirming its ability to return to the Court for further relief, including authorization to sell the 0.15 Acres of Land pursuant to CERCLA § 107(l)(4), 42 U.S.C. § 9607(l)(4), which permits *in rem* enforcement of perfected CERCLA liens. The Verified Complaint alleges that the lien was properly perfected and that Diconia owned the property at the time the lien arose (Dkt. 1 ¶¶ 24-26, 45-47; Dkt. 29-1 at 6-7). On default, these allegations are accepted as true. The Court concludes the requested declaratory relief is appropriate.

**ORDER**

IT IS ORDERED:

Plaintiff's Motion for Default Judgment (Dkt. 29) is **GRANTED**.

1. Judgment shall be entered in favor of the United States and against Defendant Diconia LLC only, in the amount of $973,540.74, representing all unreimbursed response costs incurred at the Site through January 7, 2025.

2. Pursuant to CERCLA § 107(l)(4), 42 U.S.C. § 9607(l)(4), the United States may return to this Court to seek further relief, including authorization of the judicial sale of the 0.15 Acres of Land to satisfy the CERCLA lien and recover the awarded response costs.

3. This default judgment applies only to Diconia and the 0.15 Acres of Land. Claims against Defendants Brian Tibbets and Brek A. Pilling remain pending. No Rule 54(b) certification is made.

4. The United States shall submit a proposed judgment in accordance with Rule 58.

**IT IS SO ORDERED.**

DATED: December 31, 2025

Amanda K. Brailsford
U.S. District Court Judge